MICHAEL WALLIN, Cal. Bar No. 240344
WALLIN & RUSSELL LLP
26000 Towne Centre Drive, Suite 130
Foothill Ranch, California 92610
Telephone:  949-652-2200
Facsimile:   949-652-2210
mwallin@wallinrussell.com

Attorneys for Creditor
HUAN ZHANG

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JEFFREY A. HARMAN,<br><br>           Debtor. | Case No. 1:22-bk-10981-VK<br><br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION FOR EXAMINATION OF DEBTOR JEFFREY HARMAN AND DOCUMENT PRODUCTION PURSUANT TO BANKRUPTCY RULE 2004; DECLARATION OF MICHAEL WALLIN**<br><br>[No Hearing Required] |

-1-

PLEASE TAKE NOTICE that Huan Zhang ("Zhang"), a creditor and party-in-interest in the above-captioned case, respectfully requests an Order, pursuant to Federal Rule of Bankruptcy Procedure 2004, directing the production of documents by, and examination of, debtor Jeffrey Harman.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 2004-1(f), if you object to the proposed examination and document production, you must file and serve a motion for a protective order at least fourteen (14) days before the date set for the proposed examination and document production, and set it for hearing not less than two (2) court days before the scheduled examination, unless an order shortening time is granted by the Court.

PLEASE TAKE FURTHER NOTICE that this Motion is based upon this Notice of Motion and Motion, the below Declaration of Michael Wallin, the record in this case, and any documentary or oral evidence that may be introduced at or prior to any hearing on this Motion.

PLEASE TAKE FURTHER NOTICE that the examination and document production of Jeffrey Harman will take place on **January 19, 2023** at **10:00 a.m.** at the offices of Wallin & Russell LLP, 26000 Towne Centre Drive, Suite 130, Foothill Ranch, California 92610, although participants will be given the option to attend remotely.

Dated:  December 22, 2022

WALLIN & RUSSELL LLP

By      */s/ Michael Wallin*
        MICHAEL WALLIN
        Attorneys for Creditor
        HUAN ZHANG

-2-

## MOTION FOR EXAMINATION

In support of this Motion, Huan Zhang ("Zhang") respectfully represents as follows:

I.    **STATEMENT OF FACTS**

**A.  Zhang's Claim**

Zhang met Harman during a time in her life where she was facing many challenges. Harman acted as her astrology adviser, providing advice on where she and her family should live, where to send her children to school, which house to purchase and its fengshui, and other important personal matters.  Harman represented that he provided this same type of advice and counseling to others.  As time went on, Harman continued to ingratiate himself into Zhang's life, promising to be her life-long friend, teacher, adviser, and trusted consultant.  Harman held himself out as a trustworthy, spiritual person who had Zhang's best interests at heart.

Harman also advised on when it was best for Zhang to engage in business activities, including on when it was best to sign business contracts so as to ensure success and avoid losses. Eventually, Harman began his campaign to steal Zhang's money.  Harman said that he and Zhang shared ancestors, purportedly from Ireland. He said that Zhang's astrological birth charts favored her engaging in some creative project, and that a business venture between Harman and Zhang would result in financial success.  In or about early 2017, Harman asked Zhang to invest in a motion picture equipment rental business that he wanted to start. Harman assured Zhang that he would be honest in their business dealings and would treat her fairly, and that he would not take advantage of her or steal her money.

With respect to the film rental business, Harman represented that he would use Zhang's investment to purchase film equipment, which he would then rent to individuals and companies in the motion picture industry.  He represented that the profits earned from the film equipment rental business would be applied first to repay Zhang her investment.  He guaranteed that her investment would be paid back, and that Zhang would not have to make any further financial investments, because the company would be able to operate from its own cash flows.

Harman also indicated that he knew potential customers that would be interested in renting the equipment.  Harman later confirmed on or about June 4, 2017, that he expected to earn

sufficient profits from the business to repay Zhang's investment within two years.

Harman knew that Zhang had no experience in the film equipment rental industry. Harman, by contrast, stated that he had owned and operated a film equipment rental business (specifically, through his other company, Conjunction LLC). Based on this, it was agreed that Harman would operate the film equipment rental business.

Ultimately, on or about February 9, 2017, Zhang and Harman signed the Preliminary Operating Agreement Member Managed, which functions as the operating agreement for APC (the "Operating Agreement"). Harman drafted the Operating Agreement. Harman told Zhang that the Operating Agreement was based on a standard contract template that Harman had purchased from the law firm that he had been working with in his other business in the past. Harman specifically assured Zhang that the terms of the Operating Agreement secured her investment in three ways: (1) Harman would obtain insurance to cover any theft or damage to the equipment purchased, and that insurance would cover a value greater than the purchase price of the equipment; (2) Zhang would own the equipment until her investment was repaid; and (3) Zhang's investment would be repaid from the profits of the business first, and only after that would Harman and Zhang split further profits of the business. Harman stated that Zhang need not review any of the other contractual terms because they were standard, common clauses from the template.

Based on that, Zhang was led to believe that the contract was all in order. However, when Harman sent Zhang the final draft for signature, Harman sent only the signature page. Harman called Zhang while she was driving her children to sporting practice and told her that, according to the astrological time calculations, she had to sign within a given time frame, which, according to him, was within the next hour or two. Harman had previously told Zhang that he had lost a large sum of money in a business because he signed the business contract at a bad time, based on the astrological timing calculations.

Relying on her trust in Harman's words, on Harman's representations about the time calculations on when Zhang should sign the contract, and on his representations about his plans for the business and his experience in the industry, Zhang rushed home and signed the signature page of the Operating Agreement. The Operating Agreement reflects the creation of APC for the

-4-

purpose of purchasing vintage and modem professional motion picture equipment for lease and rental in the motion picture industry. Notably, the Operating Agreement provides that no member, without the prior written consent of all other members, shall either (i) sell, lease exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property or assets of the Company; or (ii) authorize a transaction involving an actual or potential conflict of interest between a Member and the Company.

Zhang and Harman are the only members of APC. Zhang's initial capital contribution was $250,000.00. Harman did not contribute any initial capital. Harman is the managing member of APC. He has access to APC's bank accounts, including the monies provided by Zhang. He represented to Zhang that she would have access to APC's bank accounts and that he would set up a separate bank account for Zhang with an Individual Taxpayer Identification Number ("ITIN") so that her share of the profits could be distributed to her, but Harman has not provided her such access, has not created the separate account, and has not provided an ITIN number. To this day, Zhang has been denied access to APC's bank accounts.

After the parties signed the Operating Agreement, Harman continued his schemes and defrauded Zhang out of yet more money. Harman told Zhang that she needed to travel to Los Angeles so that she could provide an original signature on the Operating Agreement and so that they could meet with Wells Fargo Bank to open APC's bank account. Following Harman's advice on which dates she should travel, which flights she should take, and where she should stay in Los Angeles, Zhang travelled to Los Angeles from May 29 to June 4, 2017.

The visit to Los Angeles turned out to be a ruse to defraud Zhang into providing him yet more money. Zhang arrived on May 29, 2017, and that day no business was conducted. The next day (May 30), Harman visited Zhang at her hotel and, rather than focusing on the film equipment rental business, Harman started talking to Zhang about a movie project that he was purportedly developing, titled Riley's Rainbow. Harman stated that he had been reading a script for the film and was working with his friends on plans for its production. On May 30, he asked Zhang to have a look at the project, and stated that its budget would be below $500,000. However, on May 31, when Harman visited Zhang again in her hotel, Harman brought a version of the budget with a

revised amount of $631,092.  Over the course of the next two days (June 1 and June 2), Harman met with Zhang additional times and he continued to talk about the Riley's Rainbow project. Harman introduced Zhang to various people that he said he would want to work on the Riley's Rainbow project, including Harman's wife and son, and the writer and the writer's daughter, whom would also act in the movie.  In addition, while Harman took Zhang on a site-seeing tour in Hollywood on a motorcycle, Harman met with the line producer for the movie.  During that meeting, without Harman having warned Zhang or told her about his plans beforehand, Harman signed a contract with the line producer for work on Riley's Rainbow.  Zhang did not get involved or object because she understood that Harman wanted to make Riley's Rainbow whether or not Zhang was involved.

On Saturday, June 3, 2017, the fifth day of Zhang's stay in Los Angeles, Harman finally turned to the business of APC.  Harman had claimed to have made an appointment at Wells Fargo for June 3 to finalize the opening of the bank account for APC.  But the Wells Fargo at which Harman said he made an appointment was closed.  Harman called his wife to find out if another Wells Fargo was open.  She was able to find a different Wells Fargo that was open.  As a result, Harman and Zhang were able to open a bank account for APC that day.  At the appointment at the Wells Fargo office to open the bank account on June 3, 2017, Harman confirmed that he would provide Zhang with access to the account, including e-banking access.  He further confirmed that he would set up a separate bank account for Zhang with an ITIN number so that Zhang's share of the profits could be distributed to her.  To this day, Harman has not provided Zhang with access to the account, has not opened the separate account for the distribution of Zhang's share of the profits, and has not provided an ITIN number.

Finally, on June 4, 2017 – the day Zhang was to return to Switzerland – Harman showed up at Zhang's hotel while she was eating breakfast.  At that time, Harman asked Zhang to work with him on Riley's Rainbow.  Zhang told him no.  She told him that the organization of her five-day visit was very chaotic and that she was not happy about it.  She told him that she did not have enough information about Riley Rainbow, could not make a decision based on the short period over which she was introduced to the project, and could not invest in the project without having

-6-

her attorneys, accountants, and other advisers review information about it.

Harman continued to insist on Zhang partaking in the Riley's Rainbow with him.  Zhang told him to stop talking about Riley's Rainbow and stated that before she would entertain any discussions about Riley's Rainbow, she would need to know when her $250,000 investment in APC would be paid back.  In response to Zhang's question, Harman stated that he expected that her $250,000 investment could be paid back within two years.  Harman then began discussing Riley's Rainbow yet again.  He said that Riley's Rainbow was a great opportunity for him and his family.  He said that the astrological timing calculations favored starting on the project quickly.  In this regard, according to him, there was not enough time to set up a separate production company for Riley's Rainbow because doing so would take up to 1 to 3 months' time, and the astrological timing calculations showed that starting a business in that timeframe would be unfavorable.  As a result, he wanted Riley's Rainbow to be set up within APC temporarily, with a plan to later assign the Riley's Rainbow project to an independent production company.  Harman also stated that there were other interested parties who had approached him about working with him on a movie production project, but that he preferred to work with Zhang on Riley's Rainbow.

In response to Zhang's question about when any monies she might provide for Riley's Rainbow would be paid back, Harman stated that she would be repaid by December 2017.  He said the movie would be filmed in July and August, post-production would occur in September, October, and November, and then contracts for the distribution of the film would be negotiated and entered into in December, at which time Riley's Rainbow would earn sufficient money to repay Zhang.  Harman boasted that, in his experience, even the worst movies earn at least seven million dollars in revenue, assuring Zhang that any investment would be risk free.

Zhang continued to demur.  She stated that she needed to discuss his business proposal for Riley's Rainbow with her advisors and, if she decided to invest, how best to do so.  Zhang also pointed out that though Harman claimed that it was urgent for Zhang to decide on partaking in the project, he had not provided a written proposal for Zhang's review.  Harman was again not deterred.  Harman had brought his computer and a printer (because he wanted Zhang to provide an original signature on the APC Operating Agreement), and so he typed out a basic proposal for the

Riley's Rainbow project that day.  Harman read the proposal aloud to Zhang.  It was understood between the two that the draft was provisional and subject to change after Zhang had an opportunity to review it with her advisors.  Indeed, Harman and Zhang agreed that there were a number of open items that needed to be resolved before Zhang would invest in Riley's Rainbow, if she decided to invest at all.  For example, as described above, Harman wanted to temporarily host Riley's Rainbow through APC.  To accomplish this, Harman revised the Operating Agreement to indicate that, in addition to operating a film equipment rental business, APC could engage in the production of movies.  Harman and Zhang agreed, however, that a lawyer would need to review the revised Operating Agreement and make appropriate changes.  This was particularly true because Harman and Zhang were still discussing how the split of profits, losses, and working roles would work on Riley's Rainbow.  Nevertheless, because Zhang was in town and because Harman wanted her to provide an original signature, Zhang signed the document Harman presented that day as the revised Operating Agreement.

Despite these open items, Harman stated that Zhang should sign the document that day, representing that the astrological timing calculations revealed that Sunday, June 4, 2017 was the last window with positive energy for her to sign the contracts, and that the following several weeks had negative energy to conclude business.  Because of these timing calculations, Harman made clear that he preferred Zhang to sign a provisional document, even if it was subject to change, rather than not signing anything at all.  Zhang signed the document that day because she trusted Harman generally, because she trusted his statements about the astrological timing calculations and did not want the business to suffer by her not signing at the correct time, because he had guaranteed repayment of Zhang's $250,000 investment within two years, and stated that any monies for Riley's Rainbow, if invested, would be returned by December 2017.  But Zhang signed the document only with conditions.  Zhang and Harman agreed that before Zhang would provide any money and before Harman proceeded with the project through APC, Harman would provide Zhang with full details about the production and distribution plans for the project, they would draft and finalize full agreements for the project, and Zhang would have an opportunity to have attorneys and other advisers review and approve all of it.

-8-

Once Zhang returned home to Switzerland, despite her dealing with jetlag and the time adjustment, Zhang immediately began having her advisers review the Riley's Rainbow project and also reached out to Harman for further information about the project and his plans for it.  Harman, however, was not forthcoming with information.  Indeed, between June 6 and 9, 2017, Zhang asked Harman numerous questions about Riley's Rainbow and the film equipment rental business, but did not receive straightforward, satisfactory answers.  For example, despite Harman's previous promises that he would do so, Harman could not share details about the production and distribution plan for the movie.  As a result, during this period, Zhang told Harman on the phone that she would not partake in the Riley's Rainbow project if he continued to be unable to provide the details she was asking for.

During this same period, between June 6 and June 8, Harman repeatedly told Zhang that he was excited about the project and was working to hire actors.  To hire the actors, Harman indicated that he would need money and asked Zhang to wire him some.  Zhang kept asking for details about the project, stating she would not invest or commit to the project without them.  However, on Friday, June 19, 2017, Harman's wife emailed Zhang, stating it was mandatory that she wire money.  Harman's wife did not provide more details about why it is mandatory to have the money that day.  Zhang, concerned for her friends, believing them to be in immediate need, and not believing they could wait the weekend, wired money on June 9, 2017.  She did so not out of belief that she was committing to the project, but out of concern for people she believed to be her friends.  Specifically, on Friday, June 9, 2017, Zhang transferred an additional $210,364 in capital to APC.  Again, however, Zhang took steps to protect herself.  Zhang told Harman that the money could not be spent before the documents and agreements for Riley's Rainbow were finalized and, if money needed to be spent before that time, Zhang insisted that she should receive information on what the money would be spent on and she should be given the opportunity to approve any expenditure in advance.

Harman did not abide by Zhang's demands. Despite Zhang's repeated requests, Harman refused to provide sufficient business plans or related documentation concerning his plans for the film.  The budget he ultimately provided was inadequate.  As a result, Zhang made clear that he

was not to spend any of the monies she provided.  Nevertheless, Harman spent monies on Riley's Rainbow or other things without Zhang's approval.  Harman also failed to take steps to finalize the agreements for the film.  On or about June 15, 2017, Harman sent Zhang a partially signed Addendum to Motion Picture Deal and Stock Holder Agreement signed by Harman.  This document did not reflect the terms that Zhang and Harman were discussing, and therefore Zhang never signed it.  Zhang also learned from her advisors that Harman could have set up an independent production company for the Riley's Rainbow project in a much shorter period than he had claimed.

Based on Harman's failures to provide details and finalize the documents, Zhang made clear by the end of June 2017 that she did not want to proceed with Riley's Rainbow and that her money should be returned.  This decision was also precipitated by Harman failing to answer basic questions posed by both Zhang and her attorneys regarding the setup of Riley's Rainbow and the contractual documents.  Harman did not return the monies, still has not done so, and has not indicated when or how he will repay Zhang, but instead has delayed as much as possible.

In late June 2017, following various phone calls and emails in which Zhang told Harman that they needed to find a solution to operate Riley's Rainbow independent from APC's rental business, Zhang asked for a Skype conversation with Harman and his wife so that they could discuss how best to separate the Riley's Rainbow project from APC and how to resolve the communication issues that had arisen.  Harman and his wife never responded.  When Zhang had to travel, she appointed her attorney to discuss the pending matters with Harman.  Ultimately Harman contacted Zhang's attorney in late July, nearly a month after she had asked for the Skype conversation.  After that, in July and August 2017, communications between the parties broke down.  During this period, Harman would not respond to communications, would claim to be unreachable, and, when he did communicate, would obfuscate and lie.  As a result, and because Harman had made normal business discussions impossible, Zhang lost all trust in Harman and decided that she could no longer work with him in any capacity.

Ultimately, Zhang demanded that Harman return all of her monies paid into APC, totaling $460,374, and Zhang demanded that the legal expenses she had advanced in connection with

APC's set up and her travel expenses to Los Angeles be reimbursed by profits earned from APC. After that, the parties attempted to reach a settlement.  At one point, Harman agreed to a repayment plan, but then Harman reneged and attempted to renegotiate.  All of this caused Zhang to incur substantial legal fees and suffer emotional distress. To date, neither APC nor Harman has returned any monies to Zhang, reimbursed her legal fees, or otherwise made her whole.  Harman's continued promises to repay the money have no credibility and belie his intention of ever doing so.

**B.  State Court Judgment**

On August 14, 2018, Zhang filed an action against Harman in Los Angeles County Superior Court, Case No. BC717682 (the "State Court Complaint").  The State Court Complaint asserts nine causes of action: (1) breach of contract; (2) fraud and fraudulent inducement; (3) undue influence; (4) violation of Penal Code § 496; (5) breach of fiduciary duty; (6) intentional infliction of emotional distress' (8) declaratory relief; and (9) an accounting.

Following a bench trial on the State Court Complaint, the state court took the matter under submission on February 3, 2022.  On February 23, 2022, the state court entered the State Court Judgment ruling that Harman was liable to Zhang for the amount of $210,364 on account of his fraud and fraud in the inducement of inducing Zhang into making the payment as to Riley's Rainbow.  *See* Ex. A.

As evidence of the State Court's specific findings on the Second Cause of Action, the State Court Judgment provides that: "The Court adjudges and decrees that Plaintiff Huan Zhang, is to receive[] from Defendant Jeff Hartman (sic) and APC TECH, LLC jointly and severally, the sum of $210,364 principal plus $99,992.71 in prejudgment interest (10% per year for 4 years 9 months plus costs according to law)."

The amount that the state court awarded to Zhang is directly related to the state court's finding in favor of Zhang on her fraud and fraudulent inducement cause of action.

**C.  Adversary Proceeding**

In November 2022, Zhang initiated an adversary proceeding against Harman, Case No. 1:22-ap-01060-VK (the "Adversary Proceeding").  In the Adversary Proceeding, Zhang seeks a determination that Harman's liability to Zhang is non-dischargeable pursuant to Bankruptcy Code

-11-

§ 523.

### D. Harman's Assets

According to Harman's Schedules and Statement of Financial Affairs, Harman has ownership interests in two entities, APC Tech LLC and Conjunction LLC. It appears that both entities own substantial assets. However, Harman has not produced evidence of the assets owned by these entities, nor has Harman provided Zhang with financial records for such entities.

In addition, Harman's Schedules indicate that his non-debtor spouse has the right to receive "residuals". However, Harman has not provided adequate details regarding such "residuals".

Moreover, Harman has scheduled ownership of several vehicles, but has not provided sufficient evidence of the vehicles' condition, value, and the liens (if any), encumbering such vehicles.

Regarding Harman's income, Harman's Schedule I states that Harman and his spouse's collective monthly income is only $4,819, which is far less than Harman's monthly expenses according to his Schedule J. Of this $4,819, more than half is "net income from rental property and from operating a business." However, Zhang has not received any details or evidence of Harman's income, including his income from "operating a business."

## II.    LEGAL ARGUMENT

Zhang wishes to explore these issues and others at the examination. The proposed examination and document production is within the permissible scope of examination set forth under Federal Rule of Bankruptcy Procedure ("FRBP") 2004. The scope of permissible inquiry under FRBP 2004 is broad. FRBP 2004(b) provides:

> The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a … reorganization case under chapter 11 of the Code…, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case

or to the formulation of a plan.

The purpose of a Rule 2004 examination is to allow inquiry into the debtor's acts, conduct, or financial affairs so as to discover all assets of the estate.  See Collier on Bankruptcy ¶ 2004.01(1999).  In accordance with Local Bankruptcy Rule 2004-1(b), Zhang is informed and believes that Harman maintains a residence at 8425 Shoup Avenue, Canoga Park, California 91304.  Zhang does not know whether Harman is employed.

In accordance with Local Bankruptcy Rule 2004-1(b), Zhang's counsel met and conferred with Harman's counsel prior to filing this Motion.  Specifically, on December 14, 2022, Zhang's counsel sent a letter to Harman's counsel detailing the requested topics and document production, and asking Harman to state whether Harman is unavailable on the proposed examination date.  *See* Ex. B.  In response, Harman's attorney sent an email to Zhang's attorney.  *See* Ex. C.

Local Bankruptcy Rule 2004-1(b) requires that Zhang explain why the examination cannot proceed under Rules 7030 or 9014 of the Federal Rules of Bankruptcy Procedure.  The examination sought cannot proceed in this manner because the scope of the examination pursuant to Rule 2004 is different than, and broader than, the scope of the deposition which could be taken in the Adversary Proceeding.  In the adversary proceeding, at issue is whether Harman's debt to Zhang is dischargeable pursuant to Bankruptcy Code § 523.  In the 2004 Exam, the scope is far broader – Zhang's counsel can explore Harman's assets, income, and overall financial condition, among other topics.  These same issues cannot be fully explored within the adversary proceeding.

Local Bankruptcy Rule 2004-1(c) also requires that the proposed examiner provide at least 21 days' notice of the examination.  In compliance with this Local Rule, the examination and document production will take place at least 21 days after the date of service of this Motion. Zhang proposes to conduct the examination and document production on January 19, 2023 at 10:00 a.m. at Wallin & Russell LLP, 26000 Towne Centre Drive, Suite 130, Foothill Ranch, California 92610, although participants will be given the option to attend remotely.

**III.    CONCLUSION**

Zhang respectfully requests that this Court issue an order:

-13-

1.  Directing Jeffrey Harman to appear for examination on January 19, 2023 at 10:00 a.m. at Wallin & Russell LLP, 26000 Towne Centre Drive, Suite 130, Foothill Ranch, California 92610, although participants shall be given the option to attend remotely; and

2.  Directing Jeffrey Harman to produce, at or prior to the examination, the following documents:

a.  All of Harman's monthly bank statements for all bank accounts for the time period of January 1, 2017 to the petition date.

b.  All of Harman's brokerage statements for all brokerage accounts for the time period of January 1, 2017 to the petition date.

c.  All of Harman's spouse's monthly bank statements for all bank accounts for the time period of January 1, 2017 to the petition date.

d.  All of Harman's spouse's brokerage statements for all brokerage accounts for the time period of January 1, 2017 to the petition date.

e.  All of APC Tech LLC's monthly bank statements for all bank accounts for the time period of January 1, 2017 to the petition date.

f.  All of APC Tech LLC's brokerage statements for all brokerage accounts for the time period of January 1, 2017 to the petition date.

g.  All of Conjunction LLC's monthly bank statements for all bank accounts for the time period of January 1, 2017 to the petition date.

h.  All of Conjunction LLC's brokerage statements for all brokerage accounts for the time period of January 1, 2017 to the petition date.

i.  Documents sufficient to identify all assets of APC Tech LLC.

j.  Documents sufficient to identify all assets of Conjunction LLC.

k.  Documents sufficient to establish your, APC Tech LLC's, or Conjunction LLC's interest in any scripts regarding "Riley's Rainbow".

l.  All insurance policies in which Harman, Harman's spouse, APC Tech LLC, or Conjunction LLC has any interest.

m.  All appraisals of any assets owned by Harman, Harman's spouse, APC Tech LLC, or Conjunction LLC.

n.  Documents evidencing all residual payments to Harman's spouse from January 1, 2017 to the present.

o.  All statements regarding any life insurance policy in which Harman or Harman's spouse has any interest.

p.  Documents sufficient to establish the cash value of any life insurance policy in which Harman or Harman's spouse has an interest.

q.  Documents sufficient to establish all of Harman's sources of income from January 1, 2017 to the petition date.

r.   Documents sufficient to establish all of Harman's spouse's sources of income from January 1, 2017 to the petition date.

s.  Harman's 2019 federal and state tax returns.

t.  Harman's spouse's 2019 federal and state tax returns.

u.  APC Tech LLC's 2019 federal and state tax returns.

v.  Conjunction LLC's 2019 federal and state tax returns.

w.  Harman's 2020 federal and state tax returns.

x.  Harman's spouse's 2020 federal and state tax returns.
y.  APC Tech LLC's 2020 federal and state tax returns.
z.  Conjunction LLC's 2020 federal and state tax returns.
aa. Harman's 2021 federal and state tax returns.
bb. Harman's spouse's 2021 federal and state tax returns.
cc. APC Tech LLC's 2021 federal and state tax returns.
dd. Conjunction LLC's 2021 federal and state tax returns.

Dated:  December 22, 2022

WALLIN & RUSSELL LLP


By        */s/ Michael Wallin*
          MICHAEL WALLIN
          Attorneys for Creditor
          HUAN ZHANG

-15-

## DECLARATION OF MICHAEL WALLIN

I, Michael Wallin, declare as follows:

1.    I am an attorney licensed to practice law in the State of California and am an attorney of Wallin & Russell LLP, attorneys for creditor Huan Zhang ("Zhang").  The following facts are within my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2.    A true and correct copy of the judgment entered by the state court within the State Court Complaint is attached hereto as **Exhibit A**.

3.    Pursuant to Local Bankruptcy Rules, I met and conferred with Harman's counsel prior to filing this motion.  Specifically, on December 14, 2022, I sent a letter to Harman's counsel detailing the requested topics and document production, and asking her to provide available dates. A true and correct copy of this letter is attached hereto as **Exhibit B**.

4.    Harman's counsel responded to my letter via email.  A true and correct copy of such email is attached hereto as **Exhibit C**.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 22, 2022, at Foothill Ranch, California.


                                   _____ */s/ Michael Wallin*_____
                                   Michael Wallin

# EXHIBIT A

EJ-001

**M.S.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, State Bar number, and telephone number):* | FOR RECORDER'S USE ONLY |
|---|---|

Recording requested by and return to:

Jay T. Ramsey (SBN: 273160)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067

TEL NO.: 310.228.3700          FAX NO. (Optional): 310.228.3701

E-MAIL ADDRESS (Optional): jramsey@sheppardmullin.com

☒ ATTORNEY FOR   ☒ JUDGMENT CREDITOR   ☐ ASSIGNEE OF RECORD

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

| PLAINTIFF: Huan Zhang | CASE NUMBER:<br>BC717682 |
|---|---|
| DEFENDANT: Jeff Harman, APC Tech LLC. | |

| **ABSTRACT OF JUDGMENT—CIVIL**<br>**AND SMALL CLAIMS**  ☐ **Amended** | *FOR COURT USE ONLY* |
|---|---|

1. The   ☒ judgment creditor   ☐ assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

      Jeff Harman,
      6520 Platt Avenue. #537
      West Hills, CA 91307,

   b. Driver's license no. [last 4 digits] and state:          ☒ Unknown
   c. Social security no. [last 4 digits]:                     ☒ Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address):
      Jeff Harman
      6520 Platt Avenue. #537
      West Hills, CA 91307

2. ☒ Information on additional judgment debtors is shown on page 2.

3. Judgment creditor *(name and address):*
   Huan Zhang,
   Eichplatz 29
   8854 Galgenen, Switzerland

4. ☐ Information on additional judgment creditors is shown on page 2.

5. ☐ Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

Date: 5/31/22

Jay T. Ramsey
(TYPE OR PRINT NAME)

▶ */s/ Jay T. Ramsey*
(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $310,286.71

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date):* 5/9/2022
   b. Renewal entered on *(date):*

9. ☐ This judgment is an installment judgment.

10. ☐ An ☐ execution lien ☐ attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of *(name and address):*

11. A stay of enforcement has
    a. ☒ not been ordered by the court.
    b. ☐ been ordered by the court effective until
       *(date):*

12. a. ☒ I certify that this is a true and correct abstract of, the judgment entered in this action,
    b. ☐ A certified copy of the judgment is attached.

[SEAL]

Sherri R. Carter Executive Officer / Clerk of Court

This abstract issued on *(date):*
06/03/2022

Clerk, by _____ M. Saldana _____ , Deputy

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>EJ-001 [Rev. July 1, 2014] | **ABSTRACT OF JUDGMENT—CIVIL**<br>**AND SMALL CLAIMS** | **Page 1 of 2**<br>Code of Civil Procedure, §§ 488.480,<br>674, 700.190 |
|---|---|---|

| | |
|---|---|
| PLAINTIFF: Huan Zhang | COURT CASE NO.: |
| DEFENDANT: Jeff Harman, APC Tech LLC. | BC717682 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*

14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.                 Name and last known address

APC Tech LLC
6520 Platt Avenue. #537
West Hills, CA 91307

Driver's license no. [last 4 digits] and state:

☒ Unknown

Social security no. [last 4 digits]:                 ☒ Unknown

Summons was personally served at or mailed to *(address):*
6520 Platt Avenue. #537
West Hills, CA 91307

17.                 Name and last known address

Driver's license no. [last 4 digits] and state:

☐ Unknown

Social security no. [last 4 digits]:                 ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.                 Name and last known address

Driver's license no. [last 4 digits] and state:

☐ Unknown

Social security no. [last 4 digits]:                 ☐ Unknown

Summons was personally served at or mailed to *(address):*

19.                 Name and last known address

Driver's license no. [last 4 digits] and state:

☐ Unknown

Social security no. [last 4 digits]:                 ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

| | | |
|---|---|---|
| EJ-001 [Rev. January 1, 2014] | **ABSTRACT OF JUDGMENT—CIVIL<br>AND SMALL CLAIMS** | **Page 2 of 2** |

# EXHIBIT B

# WALLIN & RUSSELL LLP

Michael Wallin
Direct: 949.652.2202
Email: mwallin@wallinrussell.com

December 14, 2022

Stella Harvin, Esq.
5950 Canoga Avenue, Suite 400
Woodland Hills, CA 91367

Re:  Bankruptcy Case of Jeffrey Harman;
Examination Pursuant to Federal Rule of Bankruptcy Procedure, Rule 2004

Dear Stella:

As you know, my client desires to take Mr. Harman's examination pursuant to Rule 2004.  The Central District of California has Local Rules which must be followed in connection with such an examination.  This letter is sent in order to comply with these Local Rules.  Specifically, the purpose of this letter is to confer with you regarding the examination.

Please respond regarding the following matters:

1. **Date of Examination**:  I wish to take the examination on **January 12** at 10:00 a.m.  If you or Mr. Harman are unavailable for examination on January 12, by no later than December 19, please provide alternative dates between January 13 and January 31.

2. **Location of Examination**:  I intend to take the examination remotely using Zoom or a similar service.  The examination will be transcribed by a court reporter.

3. **Scope of Examination**:  The examination will include the following topics:

   a. APC Tech LLC.
   b. Conjunction LLC.
   c. "Riley's Rainbow".
   d. Residuals payable to your spouse.
   e. Your and your spouse's life insurance policies.
   f. Your vehicles.
   g. Your jewelry and precious gems.
   h. The accuracy of the information contained in your Schedules and Statement of Financial Affairs.
   i. Your income.
   j. Your liabilities.
   k. Your financial condition.

---

**WALLIN & RUSSELL LLP**

26000 Towne Centre Drive • Suite 130 • Foothill Ranch, CA 92610

December 14, 2022
Page 2

      l.  Any matter that may affect administration of your estate.
      m.  Your right to a discharge.
      n.  The operation of any your businesses and the desirability of their continuance.
      o.  Any other matter relevant to the bankruptcy case.

If you object to the examination including any of the above-described topics, please inform me by no later than December 19.

4. **Document Production**:  I request that you produce, at or prior to the examination, the following documents in your possession, custody or control:

    a.  All of your monthly bank statements for all bank accounts for the time period of January 1, 2020 to the present.
    b.  All of your brokerage statements for all brokerage accounts for the time period of January 1, 2020 to the present.
    c.  All of your spouse's monthly bank statements for all bank accounts for the time period of January 1, 2020 to the present.
    d.  All of your spouse's brokerage statements for all brokerage accounts for the time period of January 1, 2020 to the present.
    e.  All of APC Tech LLC's monthly bank statements for all bank accounts for the time period of January 1, 2020 to the present.
    f.  All of APC Tech LLC's brokerage statements for all brokerage accounts for the time period of January 1, 2020 to the present.
    g.  All of Conjunction LLC's monthly bank statements for all bank accounts for the time period of January 1, 2020 to the present.
    h.  All of Conjunction LLC's brokerage statements for all brokerage accounts for the time period of January 1, 2020 to the present.
    i.  Documents sufficient to identify all assets of APC Tech LLC.
    j.  Documents sufficient to identify all assets of Conjunction LLC.
    k.  Documents sufficient to establish your, APC Tech LLC's, or Conjunction LLC's interest in any scripts regarding "Riley's Rainbow".
    l.  All insurance policies in which you, your spouse, APC Tech LLC, or Conjunction LLC has any interest.
    m.  All appraisals of any assets owned by you, your spouse, APC Tech LLC, or Conjunction LLC.
    n.  Documents evidencing all residual payments to your spouse from January 1, 2020 to the present.
    o.  All statements regarding any life insurance policy in which you or your spouse has an interest.
    p.  Documents sufficient to establish the cash value of any life insurance policy in which you or your spouse has an interest.
    q.  Documents sufficient to establish all of your sources of income from January 1, 2020 to the present.

---

**WALLIN** & **RUSSELL** LLP

26000 Towne Centre Drive • Suite 130 • Foothill Ranch, CA 92610

December 14, 2022
Page 3

      r.   Documents sufficient to establish all of your spouse's sources of income from January 1, 2020 to the present.

      s.  Your 2019 federal and state tax returns.

      t.  Your spouse's 2019 federal and state tax returns.

      u.  APC Tech LLC's 2019 federal and state tax returns.

      v.  Conjunction LLC's 2019 federal and state tax returns.

      w.  Your 2020 federal and state tax returns.

      x.  Your spouse's 2020 federal and state tax returns.

      y.  APC Tech LLC's 2020 federal and state tax returns.

      z.  Conjunction LLC's 2020 federal and state tax returns.

      aa. Your 2021 federal and state tax returns.

      bb. Your spouse's 2021 federal and state tax returns.

      cc. APC Tech LLC's 2021 federal and state tax returns.

      dd. Conjunction LLC's 2021 federal and state tax returns.

If you object to production of any of the above-described documents, please inform me by no later than December 19.

I can be reached at (949) 652-2202 or mwallin@wallinrussell.com.  Thank you for your cooperation.

Sincerely,

Michael Wallin

for WALLIN & RUSSELL LLP

# EXHIBIT C

| | |
|---|---|
| **From:** | Stella Havkin |
| **To:** | Michael Wallin |
| **Subject:** | RE: 2004 Exam |
| **Date:** | Monday, December 19, 2022 5:06:33 PM |

Mike:

I object to any document production beyond the date of the petition. The Debtor's and his wife's income post-petition income belongs to them by law and there is no legitimate reason to request documents related to that.   Therefore, I will not agree to produce any bank statements past the date of the petition.

The rest while I believe are intended to harass the Debtor especially in light of the fact that your client filed a 523 action, we will do our best to produce the documents assuming they exist in the first place.

Further, I will not allow this to become a never ending examination.  You will have one day maximum to ask the Debtor questions.

Stella

**From:** Michael Wallin <mwallin@wallinrussell.com>
**Sent:** Wednesday, December 14, 2022 4:46 PM
**To:** Stella Havkin <stella@havkinandshrago.com>
**Subject:** 2004 Exam

Stella,

Please see the attached letter regarding the 2004 examination.  Thanks.

Mike

Michael Wallin
WALLIN & RUSSELL LLP
26000 Towne Centre Drive, Suite 130
Foothill Ranch, CA 92610
Direct:  (949) 652-2202
mwallin@wallinrussell.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

26000 TOWNE CENTRE DRIVE, SUITE 130, FOOTHILL RANCH, CA 92610

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND MOTION FOR EXAMINATION OF DEBTOR JEFFREY HARMAN AND DOCUMENT PRODUCTION PURSUANT TO BANKRUPTCY RULE 2004; DECLARATION OF MICHAEL WALLIN

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/27/2022 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/27/2022 | Michael Wallin | /s/ Michael Wallin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**

**SERVED VIA NOTICE OF ELECTRONIC FILING:**

- **Amy L Goldman (TR)**    marisol.jaramillo@lewisbrisbois.com,
  AGoldman@iq7technology.com;ecf.alert+Goldman@titlexi.com
- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com
- **Jennifer L Nassiri**    JNassiri@sheppardmullin.com, bdelacruz@sheppardmullin.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov